IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE AUTO PROPERTY & CASUALTY INSURANCE CO., <br><br> *Plaintiff*, <br><br> v. <br><br> BELL & ARTHUR CONDOMINIUM ASSOCIATION, et al., <br><br> *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) <br> No. 18 C 5927 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff State Auto Property & Casualty Insurance Co. is an Iowa insurance corporation that has conducted business in Illinois. (Dkt. 105 ¶ 1). Defendants Bell & Arthur Condominium Association ("the Association") is based in Chicago, Illinois, along with individual defendants Michael Mento, Lisa Mijatovic, Driton Ramushi, and Seli Benko, who were officers or directors of the Association. (*Id.* ¶¶ 2-3). The Court previously granted summary judgment for State Auto on two of the three counts that State Auto brought, finding that State Auto had no duty to defend Defendants in underlying litigation as the litigation was clearly outside the terms of the policy. (Dkt. 115). Plaintiff has filed a motion for summary judgment as to the remaining count, which is for reimbursement of defense costs. (Dkt. 122). Because there is no dispute as to any material fact, the Court grants State Auto's motion for summary judgment. However, the Court refrains from deciding the specific amount to be reimbursed by the Defendants until additional supporting evidence is filed with the Court.

1

## BACKGROUND

On April 14, 2020, the Court granted State Auto's Motion for Summary Judgment, finding that State Auto does not have a duty to defend the Association and the Individual Defendants as to the underlying litigation in Illinois state court. (Dkt. 122-1 ¶¶ 7–8).[1] State Auto paid the law firm of Hepler Broom, LLC a total of $138,589.03 for attorneys' fees and expenses for the defense of its Insureds in the Underlying Litigation, and there is an outstanding invoice for $2,699.05 as to Hepler Broom which is still subject to review and audit. (*Id.* ¶ 9). State Auto paid the law firm of Lewis Brisbois Bisgaard & Smith LLP a total of $41,546.25 for attorneys' fees and expenses for the defense of its Insureds in the Underlying Litigation. (*Id.* ¶ 10). The total amount of attorneys' fees and expenses paid to the two law firms for the defense of the Underlying Litigation is $180,135.28. (*Id.* ¶ 11).

State Auto defended the Association and Individual Defendants under reservation of rights. (*Id.* ¶ 12). The initial reservation of rights letters sent to the Association and each Individual Insured, State Auto expressly reserved its right to seek reimbursement and to recover defense costs paid. (*Id.* ¶ 13). In State Auto's subsequent reservation of rights letters issued to the Association and each Individual Insured, State Auto either expressly reserved its rights to seek reimbursement and to recover defense costs or it incorporated by reference its prior reservation of rights letters. (*Id.* ¶ 14). The Individual Defendants admit that some reservation of rights documents were issued, but the first letter addresses only Michael Mento and lists only "Bell and Arthur Condominium Association" as the Insured despite the Underlying Lawsuit including the Individual Defendants

---

[1] Both the Association and the Individual Defendants quibble with certain facts contained in State Auto's Rule 56.1 statement but both overwhelmingly fail to support their disagreements with anything in the record. "A mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)

from the first filed complaint, although in subsequent letters the Individuals and Association are each addressed. (Dkt. 125-2 ¶¶ 12–13).

The State Auto Commercial General Liability policy contains the following endorsement, which provides:

**ILLINOIS CHANGES – DEFENSE COST REIMBURSEMENT**

\* \* \*

**A.** The provisions of Paragraphs B., C. and D. are added to all Insuring Agreements that set forth a duty to defend under:

    **1.** Section I of the Commercial General Liability; Commercial Umbrella Directors, Officers and Trustees Liability, Employee Benefits Liability, Employers Liability, Employment-Related Practices Liability, Liquor Liability, Owners and Contractors Protective Liability, Products/Completed Operations Liability, Product Withdrawal, and Railroad Protective Liability;

    **2.** Section A. of the Businessowners Liability;

    **3.** Section II of the Employment Practices Liability;

    **4.** Section II – Liability Coverage in Paragraph A. Coverage under the Auto Dealers, Business Auto, Garage, Motor Carrier and Truckers Coverage Forms.

    **5.** Section III under the Auto Dealers and Motor Carrier Coverage Forms.

**B.** Paragraph B., C. and D. also applies to any other provision in the policy that sets forth a duty to defend. In event a claim or "suit" seeks damages to which this insurance arguably may not apply, we will, at our option:

    **1.** Provide the insured with counsel and enter a defense of such claim or "suit" while proceeding to investigate the factual situation;

    **2.** Pursue these courses of action without waiving any rights and without prejudice to us or to the insured;

    **3.** Seek a "declaratory judgment" as to what our obligations are under the circumstances;

  **C.** Should a court determine that the insurance does not apply and that we therefore had no duty to defend such claim or "suit", we may:

    **1.** Withdraw from the defense of any such "suit" and afford the insured no further defense or other benefits related to such claim or "suit"; and

    **2.** Be entitled to reimbursement from the insured, of all amounts paid by us for the defense provided in the underlying "suit" which we had no contractual duty to provide (other than by the terms of this endorsement), but only for those defense costs incurred after we have notified you in writing that there may not be coverage and we are reserving our rights to terminate the defense and seek reimbursement for defense costs

    **3.** Neither party shall have the right to seek reimbursement of any amount or expenses paid by that party associated with the "declaratory judgment".

(Dkt. 122-1 ¶ 15).[2]

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## DISCUSSION

### I. State Auto's Policy and Reservation of Rights Letter

In its motion for summary judgment, State Auto maintains that under its policy it is entitled to seek reimbursement of the attorneys' fees and expenses incurred and paid to defend its Insureds in the underlying litigation. Well-settled law establishes that in if an insurer "wishes to retain its

---

[2] Both the Association and the Individual Defendants have filed additional statements of material fact. (Dkts. 125-2; 127 at 7–9). However, as discussed further below, these facts are immaterial to the dispute before the Court and so the Court will not recite them here

right to seek reimbursement of defense costs in the event it later is determined that the underlying claim is not covered by the policy, the insurer is free to include such a term in its insurance contract." *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 865 N.E. 2d 1092, 1098 (Ill. 2005).[3]

The Court is required then to turn to the language of the policy and the reservation of rights letter. "When construing the language of an insurance policy, a court is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." *Country Mutual Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 342–43 (Ill. 2006). Additionally, "[i]f the words used in the policy are unambiguous, they are given their plain, ordinary, and popular meaning," and "[a]lthough insurance policies are construed liberally in favor of coverage, this rule of construction comes into play only when the policy language is ambiguous." *Id.* at 343.

Neither the Association nor the Individual Defendants dispute that the policy, which includes an endorsement for "Defense Cost Reimbursement" is clear and unambiguous as to whether State Auto may recoup the money spent on legal fees.[4] Paragraph (C) of the endorsement states that State Auto can only seek reimbursement "after we have notified you in writing that there

---

[3] In *Midwest Sporting Goods*, the Illinois Supreme Court denied the insurance company reimbursement of its defense costs, stating that "[t]he fact that the trial court ultimately found that the underlying claims against Midwest were not covered by the Gainsco policies does not entitle Gainsco to reimbursement of its defense costs," because of ambiguity in the reservation of rights letter that revealed uncertainty concerning coverage. 865 N.E. 2d at 1104.

[4] The Individual Defendants filed a reply memorandum that did not contain any case law and was a series of conclusory arguments. (Dkt. 125-12). One such argument is that "the Individual Defendants have limited liability under 805 ILCS 105/108.70 wherein the Plaintiff must show willful and wanton conduct in order to hold them responsible for their decisions made." 805 ILCS 105/108.70 limits liability of directors and officers of a corporation. This statute has no bearing on this case, which is not imposing liability on the Individual Defendants and is only seeking reimbursement of legal costs associated with defending the Individual Defendants. Individual Defendants surely recognize the inapplicability of this statute considering they make this argument in two sentences without support. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("Moreover, 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).'") (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).

may not be coverage and we are reserving our rights to terminate the defense and seek reimbursement for defense costs." (Dkt. 122-1 ¶ 15).

Both sets of Defendants further admit that State Auto notified the Association of the House Counsel assigned to the case in its initial reservation of rights letter and provided an updated reservation of rights after each amended complaint in the Underlying Litigation. (Dkts. 125-2 ¶¶ 13–14; 127 ¶¶ 13–14). What the Association takes issue with is that State Auto did not send reservation of rights letters pertaining to the criminal contempt proceeding against Individual Defendants Michael Mento and Seli Benko or for the interlocutory appeal filed by Michael Mento. (Dkt. 128 at 3). This is not fatal to State Auto's motion. It is undisputed that State Auto sent reservation of rights letters to all Defendants for the underlying litigation, as is required by the Policy. (Dkts. 125-2 ¶¶ 12–15; 127 ¶¶ 12–15). The Association fails to cite any support that State Auto needed to continue sending reservation of right letters for actions that were part of the underlying litigation, and the Court cannot find any law that supports the contention that State Auto needed to have sent reservation of rights letters for these discrete issues.[5] The Association's additional facts as to the criminal contempt and interlocutory appeal are immaterial to the matter before the Court. Given that it is undisputed that State Auto's policy unambiguously allows them to seek reimbursement and that they sent reservation of right letters to the parties notifying them as their right to reimbursement for the underlying litigation, the Court grants State Auto's motion for summary judgment.

---

[5] The Court further notes that the Association seems to acknowledge that the interlocutory appeal and the criminal contempt petition form part of the underlying litigation. In its statement of additional facts, after describing the appeal and criminal contempt petition, the Association describes the Hepler Broom LLC withdrawing "in the underlying litigation," which presumably includes the appeal and criminal contempt petitions that Hepler Broom was serving as counsel during. (Dkt. 127 at 8–9, ¶¶ 9–14).

**II.     Amount of Attorney Fees**

It is clear that State Auto may receive reimbursement for the legal fees spent in connection with the underlying dispute. What is less clear is the precise amount State Auto may recover. In support of its statement that they are owed approximately $180,000 in attorneys' fees from Defendants, State Auto has attached two affidavits from employees named Kelli Galbreath and Jenny Rabe, who both attest as to the amount of legal fees paid to the two law firms in the underlying litigation. (Dkts. 122-11; 122-12). Both the Association and the Individual Defendants take issue with the affidavits, which they believe are improper and self-serving. The Association cites to case law that holds that an averment that an affiant was aware of a statement made by another was insufficient foundation to support that the affiant had personal knowledge that the person made the statement. *Ward v. First Federal Savings Bank*, 173 F.3d 611, 618 (7th Cir. 1999).

The Court is unpersuaded that it may not consider the affidavits because they are self-serving. First, "[d]eposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). The term "self-serving" "must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Id.* (citations omitted). The Court will not refuse to consider an affidavit merely because it is helpful to State Auto's case.

Second, there is nothing improper in these affidavits because "pursuant to Rule 56(e) affidavits are only to be 'made on personal knowledge.' Put another way, affidavits 'must show that the affiant is competent to testify to the matters at hand, and must contain facts that would be admissible in evidence.'" *Markel v. Board of Regents*, 276 F.3d 906, 912 (7th Cir. 2002) (internal citations omitted). Here, both Galbreath and Rabe have sworn that they work for State Auto's

7

legal department and have reviewed fee statements for approval as part of their job duties. (Dkts. 122-11 ¶¶ 2–7; 122-12 ¶¶ 2–6). These affidavits are proper under Rule 56, and the Court considers them accordingly.

Finally, neither the Association nor the Individual Defendants cite a case that says summary judgment must be denied where there is a dispute as to the amount of attorney fees although the policy is clear the insurer may be reimbursed. However, this does not mean that State Auto does not need to provide additional evidence before it can receive its just reimbursement. In *Taco Bell Corp. v. Continental Casualty Co.*, the court upheld the defense costs awarded based on an affidavit that was from the firm that audited the bills, which the Seventh Circuit described as "excruciatingly detailed." 388 F.3d 1069, 1076 (7th Cir. 2004). State Auto attempts to distinguish this case by stating that *Taco Bell* pertained to a shifting of legal fees, but such attempts at distinction fail because that case dealt with whether the insurer had a duty to defend and then considered what defense costs the insurer owed, a summary that comes from State Auto itself. Certainly, as *Taco Bell* stated "where there are market incentives to economize, there is no occasion for a painstaking judicial review," and certainly, there were incentives for State Auto to economize given that it was far from assured they would recover fees until this Court's grant of summary judgment. *Id.* However, merely holding that the Defendants were on the hook for approximately $180,000 in legal fees based on the word of two State Auto employees with no supporting evidence would amount to little, if any, judicial review. Even though the Court agrees that State Auto may recover the legal fees under the terms of its policy and grants summary judgment, the Court will require State Auto to file the documents Galbreath and Rabe relied upon in their affidavits as support before ruling the Defendants are on the hook for such a sum.[6] The

---

[6] State Auto may also file support, such as from a third-party auditor as in *Taco Bell*, to attest to the legal fees incurred or some other thorough summary that accounts for a breakdown in the legal fees.

8

Court does not wish to impose painstaking judicial review, but such an accounting is common in other cases where the Court awards attorney fees. Merely because State Auto's policy is clear they may recover fees does not mean the Court need not review the expenses incurred to make sure it is an honest and faithful account.

## CONCLUSION

Because the undisputed material facts show that State Auto may recover attorneys' fees associated with representation for the underlying litigation, State Auto's motion for summary judgment [Dkt. 122] is granted. However, in order to ensure the attorneys fees have been properly accounted, the Court directs State Auto to file additional evidence supporting its fees in order for the judgment order to be accurate within two weeks of the entry of this order. The Court also dismisses Defendant Benko's motion to have her attorney withdraw and to seek another attorney. [Dkt. 135]. Benko was represented during the course of these proceedings and her interests were presented to the Court.

_____
Virginia M. Kendall
United States District Judge

Date: October 15, 2020

9